**Kyu Hong KIM, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 01–CO–449.**

District of Columbia Court of Appeals.

Argued Feb. 6, 2002.

Decided Feb. 28, 2002.

Peter A. Greenburg, Rockville, MD, with whom Eric M. Dickman was on the brief, for appellant.

Melinda J. Foster, Assistant United States Attorney, with whom Roscoe C. Howard, United States Attorney, and John R. Fisher and Mary–Patrice Brown, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and GLICKMAN, Associate Judges, and BELSON, Senior Judge.

REID, Associate Judge:

Appellant Kyu Hong Kim appeals from the denial of his motion to withdraw his guilty plea to one count of possession of an unregistered firearm, in violation of D.C.Code §§ 6–2311, –2376 (1995); and carrying a pistol without a license ("CPWOL"), in violation of § 22–3204 (1996). He claims that his lawyer rendered ineffective assistance of counsel by incorrectly advising him of the deportation consequences of his guilty pleas, and that the trial court erred in denying his motion to set aside judgment of conviction and

permit withdrawal of plea, without a hearing. Because the record before us does not afford an adequate basis on which to resolve Mr. Kim's main contention, we are constrained to remand this case to the trial court for a hearing and responses to questions specified herein.

## I.

The record before us shows that on October 27, 1998, Mr. Kim attended a disposition hearing and entered a guilty plea to two offenses. The trial court asked the prosecutor to indicate "what the government's evidence would show if the case went to trial." The prosecutor responded:

Had this case gone to trial ..., the government would have established beyond a reasonable doubt that on October 8th, 1997, at approximately 10:20 in the evening, officers of the Metropolitan Police Department arrived at 156 L Street, S.E. .... That being the defendant's place of business and met with the defendant. An inspector observed six philly blunt boxes containing various size illegal crack bags under the counter.

Inspector Delgato informed the defendant that these bags were illegal. The store owner [Mr. Kim] stated that he would surrender the bags and in addition stated that he had two handguns that he would also give to the police.

The owner recovered a green gun bag which included a .9 millimeter pistol loaded with one round—... at the time the pistol was submitted and tested and found to function. In addition, a certificate of no record of a license to carry a pistol was submitted and the defendant did not have a license to carry the pistol.

In addition, at the time the defendant gave the police officer the weapons, the pistol was conveniently accessible to the defendant and within his reach. In addition, the pistol was not registered.

The government would have established that beyond a reasonable doubt.

At the beginning of the disposition hearing, the trial judge asked Mr. Kim, through an interpreter, whether he was "born in the United States?" He responded in the negative, and also informed the court that he was not a United States citizen. The following exchange then occurred between the court and Mr. Kim:

THE COURT: Mr. Kim, have you had an opportunity to talk to your lawyer about the possible immigration consequences of your plea?

MR. KIM: Yes.

THE COURT: You are aware that your plea could result in such consequences as deportation, change in status and inability to ever become a United States citizen?

MR. KIM: Yes.

THE COURT: And understanding the consequences, it is your decision that you still wish to plead guilty?

MR. KIM: Yes.

On August 4, 1998, defense counsel transmitted a letter to the trial judge regarding Mr. Kim's scheduled August 6, 1998 sentencing. The letter focused on the immigration consequences of the sentence, stating, in part:

Through this letter I am asking the Court to sentence Mr. Kim to less than one year of probation with a fine. I make this unusual request because the Immigration and Naturalization Service, in other contexts, has treated sentences of one year or more—whether involving probation or incarceration—materially different than sentences less than one year. Specifically, any assault related offense which receives one year or more is presumptively deportable, even if the sentence is one year o[f] unsupervised probation for common law battery. On

the other hand, a sentence of 364 days of incarceration for mayhem would not result in such a deportation.

Of course, counsel has advised Mr. Kim that any conviction may be problematic and that INS can change these rules and give such cha[n]ges retroactive application. Nonetheless, in the interests of caution and *especially because it is an appropriate sentence in any event,* I ask that the Court impose such a sentence.

Mr. Kim is thirty-eight years old and has never been convicted of a crime. He is Korean born but has been lawfully in this country for over thirteen years.

(Emphasis in original). Defense counsel added a footnote, stating: "The INS does not differentiate between the different natures of sentences. It only looks at their length."

The trial judge sentenced Mr. Kim to thirty days of incarceration on the offense of carrying a pistol without a license, but suspended execution of the sentence, placed him on probation for ten months, and ordered him to pay a $500.00 fine. With respect to the unregistered firearm charge, the judge sentenced Mr. Kim to fifteen days in jail, but again suspended execution of the sentence, placed him on probation for six months, and imposed a $250.00 fine. The sentences were ordered to run concurrently.

On November 15, 2000, Mr. Kim filed a motion to set aside judgment of conviction and permit withdrawal of plea. Paragraphs 1, 2, and 4 of the motion declared:

1. The defendant's guilty pleas in this case were in reliance on the advice of his then counsel that he would not be subject to being deported as a result thereof.
2. The defendant's then counsel admits that he advised the defendant that he would be less likely to be deported as a result of the plea he entered than if he pleaded to another offense. . . .
4. The offenses with which the defendant was charged included offenses which would not have subjected him to deportation upon conviction, and to which he could have pleaded guilty instead of those to which he did plea[d].

Mr. Kim's affidavit, which was attached to his motion, is silent regarding the immigration advice given him by his counsel. His counsel's memorandum in support of his motion, however, asserts that:

[Mr.] Kim states that [defense counsel] informed him that if he would plead guilty to the firearms offenses the prosecution would dismiss the drug paraphernalia charge and the charge of possession of unregistered ammunition. [Mr.] Kim further states that he expressly asked [defense counsel] if he would be subject to being deported if he pleaded guilty to any of the charges and that [defense counsel's] response was that if [Mr.] Kim were not sentenced to more than two years imprisonment on the firearms charges he would not be subject to deportation. [Mr.] Kim's guilty pleas were in reliance on that advice.

On March 8, 2001, the trial court ordered defense counsel to "respond in writing to the claims raised" in Mr. Kim's motion. Defense counsel's written response states, in part:

I strongly felt that Mr. Kim should avoid any drug-related conviction as I felt that his chances of deportation were greatest if he was convicted of a drug offense. I sought a plea to the ammunition count but the government did not allow such a plea. Ultimately, an associate in my firm . . . handled the plea and sentencing.

I told Mr. Kim that he might face deportation for any charge. I did not tell him that he would be subject to deportation only if he were to receive more than two years imprisonment. I would never have said such a thing because (1) his plea did not expose him to such a sentence, and (2) INS can change its policies retroactively, so one is never able to make such a promise.

I have reviewed the plea transcript. In it the Court advised Mr. Kim that he might face deportation for this offense. However, in the sentencing transcript I see a reference to a memorandum I filed with the Court. I have not been able to review that in preparing this response. It may be helpful on these issues.

After reviewing defense counsel's response, the trial court issued a five-page order denying Mr. Kim's motion. He filed a timely appeal.

## II.

On appeal, Mr. Kim challenges the trial court's conclusion that he was not incorrectly advised by his defense counsel, and maintains that he received ineffective assistance of counsel regarding the impact of his guilty plea on his immigration status. Furthermore, he contends that the trial court erred in denying his motion without a hearing.

The record before us does not afford an adequate basis on which to resolve Mr. Kim's main contention. We are uncertain as to the precise advice defense counsel gave Mr. Kim concerning his deportability in the event he entered a guilty plea to the charges of carrying a pistol without a license and possession of an unregistered firearm. Nor are we able to discern from the record the precise advice rendered about the drug paraphernalia charge and its impact on Mr. Kim's immigration status should he be convicted.[1] Equally important, the record is unclear regarding whether, and if so, to what extent, Mr. Kim relied on his defense counsel's advice; and whether any advice given was correct. A hearing is necessary to resolve these matters. Therefore, we are constrained to remand this case to the trial court for a hearing, factual findings and conclusions of law relating at least to the following questions:

What advice did defense counsel give to Mr. Kim concerning the immigration consequences of his guilty plea?

Was the advice correct or misleading under immigration law?

If the advice was incorrect or misleading, what effect did it have on Mr. Kim's decision to plead to the offenses of carrying a weapon without a license and possession of an unregistered firearm?

Under the circumstances of this case, did defense counsel render constitutionally ineffective assistance in advising Mr. Kim as he did?

Accordingly, we remand this matter to the trial court for further proceedings.

*So ordered.*

---

**1.** The record reveals a conflict between Mr. Kim and his defense counsel regarding the advice given.